UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIMOTHY RAMIREZ,

                                        Petitioner,

                    v.

WILLIAM F. KEYSER,

                                        Respondent.

No. 20-CV-8445 (KMK)

ORDER ADOPTING
REPORT & RECOMMENDATION

KENNETH M. KARAS, United States District Judge:

Timothy Ramirez ("Petitioner"), proceeding pro se, filed a Petition for a Writ of Habeas Corpus (the "Petition"), pursuant to 28 U.S.C. § 2254, challenging his August 12, 2013 conviction and subsequent sentence. (*See generally* Pet. for Writ of Habeas Corpus ("Pet.") (Dkt. No. 2).) Following a jury trial in New York State Supreme Court, Dutchess County, Petitioner was found guilty of conspiracy in the second degree, two counts of attempted murder in the second degree, one count of assault in the first degree, and one count of attempted assault in the first degree. (*See* Dkt. 9-31 at 108–109.) He received sentences amounting in the aggregate to fifty-eight and one-third to seventy-five years imprisonment. (*See* Dkt. No. 18-1 at 14–16.) Petitioner is currently serving his sentence at the Five Points Correctional Facility in Seneca County, New York. (*See* Dkt.)

On October 26, 2020, the Court referred the Petition to Magistrate Judge Paul E. Davison. (Dkt. No. 7.) In a Report and Recommendation ("R&R") dated February 14, 2023, Judge Davison recommended that the Petition be denied in its entirety. (*See* Report & Recommendation ("R&R") (Dkt. No. 21).) Petitioner filed Objections to the R&R on May 1, 2023. (*See* Petitioner's Objections to R&R ("Obj.") (Dkt. No. 25).) Respondent has not

responded to the Objections.  (*See generally* Dkt.)  After a review of the R&R and Petitioner's

Objections, the Court adopts the result recommended in the R&R and denies the Petition.

I.  Background

The factual and procedural background of this case are set forth in Judge Davison's

thorough R&R and the Court assumes the Parties' familiarity therewith.  (*See* R&R 2–8.)  The

Court here summarizes only the facts relevant to addressing Petitioner's Objections to the R&R.

A.  Factual Background

1.  The Crime

Between March 4, 2012, and March 6, 2012, Petitioner and six other members of the

Almighty Latin King and Queen Nation ("Latin Kings") conspired to kill Ruben Rivera and Kym

Perez-Colon.  (R&R at 2.)  Petitioner, a leader of the gang, issued a "direct order," instructing

four other Latin Kings to kill Rivera and Perez-Colon.  (*Id.*)  On March 6, 2012, the four gang

member accomplices went to Rivera and Perez-Colon's apartment.  (*Id.*)  One of the four

accomplices shot Perez-Colon in the chest and then shot Rivera in the face. Another one of the

four gang members stabbed Rivera with a knife.  (*Id.*) The four accomplices then fled.  (*Id.*)

Petitioner and his co-defendants were indicted on May 2, 2012.  Petitioner was accused

of (1) one count of conspiracy in the second degree, (N.Y. Penal Law ("NYPL") § 101.15); (2)

two counts of attempted murder in the second degree, (NYPL §§ 110.00, 125.25(1)); and (3) two

counts of assault in the first degree, (NYPL § 120.10(1)).  (*See* Aff. of Kristen A. Rappleyea

("Rappleyea Aff.") Ex. 2 (Dkt. No. 8-2).)

### 2.  The Trial and Verdict

Trial began on April 22, 2013, and continued until June 1, 2013.  (R&R at 2.)  Prior to the testimony of the first lay witness, the prosecution offered Petitioner a reduced sentence in exchange for Petitioner's cooperation and his plea of guilty to the charges on the indictment.  (*Id.* at 3.)  The prosecution offered Petitioner an eleven and one-half year sentence, but Petitioner rejected the offer.  (*Id.*)

By May 23, 2013, the prosecution completed its case and the defense rested.  (*Id.*)  At the end of the trial day, the court informed the jury of the upcoming schedule and warned that the jury may have to be sequestered for the remainder of trial.  (*Id.*)  The court dismissed the jury and held the charge conference.  (*Id.*)  Trial reconvened on May 28, 2013.  (*Id.*)  After the defense counsel delivered their summations, the court dismissed the jury and the defendants and conducted proceedings with only counsel present.  (*Id.*)  The court informed counsel that the jury would be sequestered.  (*Id.*)  Petitioner's counsel, David Segal, asked whether defense counsel was required to be present when the court instructed the jury about sequestration. (*Id.* at 3–4.) The court informed defense counsel that they would be called back in if there were any problems.  (*Id.* at 4.)  All counsel then left, and the court brought the jurors back and advised them that they would be sequestered in a particular hotel for their deliberations.  (*Id.*)  The court further informed them that they would need to bring personal items the next day and they would take a bus from the courthouse to the hotel after they finished for the day.  (*Id.*)  The court also reviewed the next day's scheduled and inquired whether any of the jurors had dietary restrictions.  (*Id.*)  The court answered the jurors' questions before releasing them for the evening.  (*Id.*)

The following day. May 29, 2013, the prosecutor delivered his summation.  (*Id.*)  At the end of the prosecution's summation, all of the defendants moved for a mistrial on the grounds that the prosecutor used words meant to "inflame" the jury in his summation.  (*Id.*)  The trial court denied defendants' motion and held that the prosecutor had the right to make fair comment on the evidence and that the defendants were not prejudiced by the summation.  (*Id.*)

After summations, the court instructed the jury on the crimes each defendant allegedly committed.  (*Id.*)  The jury deliberated for approximately two days before returning the verdict. (*Id.*)  The jury found Petitioner guilty of one count of conspiracy in the second degree, two counts of attempted murder in the second degree, one count of assault in the first degree, and one count of attempted assault in the first degree.  (*Id.*)

### 3.  The Sentencing

Petitioner was sentenced on August 12, 2013.  (*Id.* at 5.)  For the conspiracy count, Petitioner was sentenced to an indeterminate term of eight and one-third to twenty-five years in prison.  (*Id.*)  For each attempted murder count, Petitioner was sentenced to a determinate term of twenty-five years to be followed by five years post-release supervision.  (*Id.*)  The court imposed these sentences to run consecutively.  (*Id.*)  For the assault count, Petitioner was sentenced to a determinate term of fifteen years to be followed by five years post-release supervision, and for the attempted assault count, Petitioner was sentenced to a determinate term of ten years to be followed by five years post-release supervision.  (*Id.*)  Petitioner's sentences for the assault and the attempted assault were to run concurrently with the sentences for the other counts.  (*Id.*)

B.  Procedural History

1.  Direct Appeal

On July 5, 2016, Petitioner, through counsel, appealed his conviction.  (*Id.*)  Petitioner

raised six grounds for appeal, including that: (1) the county court improperly issued the

sequestration instructions to the jury in the absence of Petitioner and his counsel; (2) the county

court allowed juror note-taking but then failed to instruct the jury on the use of notes; (3) the

county court improperly denied Petitioner's request to charge the jury on the lesser included

offense of conspiracy in the fourth degree; (4) the state improperly introduced evidence of other

crimes; (5) the county court improvidently denied defense counsel's motion for a mistrial based

on improper prosecutorial summation argument; and (6) the county court improperly imposed

the maximum sentence.  (*Id.*)  The state submitted its opposition on October 5, 2017.  (*Id.*)

By decision dated January 10, 2018, the Appellate Division, Second Department affirmed

the judgment against Petitioner, rejecting each of Petitioner's arguments.  (*Id.* at 6 (citing *People

v. Ramirez*, 69 N.Y.S.3d 76 (App. Div. 2018)).)  On January 20, 2018, Petitioner, through

counsel, requested leave to appeal the Appellate Division's decision to the Court of Appeals.

(*Id.*)  The state submitted its opposition on March 5, 2018.  (*Id.*)  On April 2, 2018, the Court of

Appeals summarily denied Petitioner's request for leave to appeal.  (*Id.* (citing *People v.

Ramirez*, 102 N.E.3d 1067 (N.Y. 2018)).)

2.  New York Criminal Procedure Law § 440.10 Motion

By application dated October 18, 2016, Petitioner submitted a Freedom of Information

Law request to the Assistant District Attorney for Dutchess County for the full contents of his

file.  (R&R at 6–7.)  After receiving these documents, on November 28, 2018, Petitioner filed a

5

motion to vacate the judgment pursuant to New York Criminal Procedure Law ("NYCPL") § 440.10.  (R&R at 7.)  Petitioner raised three arguments in his Section 440.10 motion.  (*Id.*)  First, Petitioner argued that the trial prosecutor impermissibly withheld *Brady/Giglio* evidence.  (*Id.*)  Second, Petitioner argued that he was actually innocent of the crimes for which he was convicted.  (*Id.*)  Finally, Petitioner argued that the evidence did not support the verdict.  (*Id.*)  The state submitted its opposition on August 30, 2019.  (*Id.*)  Petitioner submitted a reply on September 10, 2019.  (*Id.*)

On December 3, 2019, the Dutchess County Court denied Petitioner's Section 440.10 motion.  (*Id.*)  Petitioner requested leave to appeal the county court's decision to the Appellate Division, but on May 18, 2020, the Appellate Division summarily denied Petitioner's request.  (*Id.* at 7–8 (citing *People v. Ramirez*, No. 2020-01975, 30/12, 2020 WL 2517504 (App. Div. May 18, 2020)).)

### 3.  Habeas Petition

The instant Petition was filed on October 8, 2020.  (*See* Pet.)  Respondent filed an Opposition on December 14, 2020.  (*See* Mem. of Law in Opp. to Pet. ("Opp.") (Dkt. No. 9); Rappleyea Aff. (Dkt. No. 8).  On February 12, 2021, Petitioner filed a Traverse in Return.  (*See* Traverse in Return ("Traverse") (Dkt. No. 14).)

Judge Davison issued the R&R on February 14, 2023, recommending that this Court deny Petitioner's request for relief and dismiss the Petition in its entirety.  (*See* R&R.)  Following an extension, Petitioner filed his Objections on May 1, 2023. (*See* Obj.)

## II.  Discussion

### A.  Standard of Review

#### 1.  Review of a Magistrate Judge's Report and Recommendation

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge."  28 U.S.C. § 636(b)(1).  Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and recommendation.  The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin [fourteen] days after being served with a copy of the recommended disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant to Federal Rules of Civil Procedure 5(b)(2)(C)–(F), *see* Fed. R. Civ. P. 6(d), for a total of seventeen days, *see* Fed. R. Civ. P. 6(a)(1).

Where a party submits timely objections to a report and recommendation, as Petitioner has done here, the Court reviews de novo the parts of the report and recommendation to which the party objected.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law."  *Eisenberg v. New Eng. Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)); *see also Mack v. Collado*, No. 21-CV-8541, 2023 WL 6200170, at *2 (S.D.N.Y. Sept. 22, 2023) (same).

Finally, pleadings submitted by pro se litigants are held to a less strict standard than those drafted by attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser standard than other parties." (italics omitted)); *see also Alfonso v. Lamanna*, No. 18-CV-4607, 2022 WL 14061783, at *4 (S.D.N.Y. Oct. 24, 2022) (same). Because Petitioner is proceeding pro se, the Court construes his pleadings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (italics omitted) (internal quotation marks and citation omitted); *see also Shamilov v. City of New York*, No. 20-CV-10224, 2024 WL 708193, at *2 (S.D.N.Y. Feb. 21, 2024) (same). However, this "does not exempt a [pro se litigant] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotation marks and citation omitted); *see also Francis v. Johnson & Johnson*, No. 22-CV-03812, 2023 WL 9004775, at *1 (S.D.N.Y. Dec. 28, 2023) (same).

## 2. Habeas Corpus Standard of Review

Petitions for writs of habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that a state prisoner may seek habeas corpus relief in federal court "on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). "The writ may not issue for any claim adjudicated on the merits by a state court unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Epps v. Poole*, 687 F.3d

46, 50 (2d Cir. 2012) (quoting 28 U.S.C. § 2254(d)(1)–(2)); *see also Brims v. Collado*, No. 18-CV-6973, 2022 WL 6807545, at *5 (S.D.N.Y. Oct. 11, 2022) (same).  In this context, "it is the habeas applicant's burden to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("The petitioner carries the burden of proof."); *Gantt v. Miller*, No. 19-CV-2910, 2023 WL 6200870, at *7 (S.D.N.Y. July 28, 2023) ("[E]ven if a state court decision is contrary to . . . federal law, the petitioner still carries the ultimate burden . . . ." (internal quotation marks and citation omitted)).

A decision is "contrary to" clearly established Federal law if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *see also Bowie v. Lee*, No. 13-CV-7317, 2021 WL 6127048, at *8 (S.D.N.Y. Dec. 28, 2021) (same).  A decision is "an unreasonable application of clearly established Federal law" if a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407–08 (alterations adopted) (internal quotation marks and citation omitted); *see also May v. Griffin*, No. 17-CV-6319, 2021 WL 5450346, at *7 (S.D.N.Y. Nov. 19, 2021) (same).  "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions.  And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (alteration adopted) (internal quotation marks and citations

omitted); *see also id*. at 420 (noting that a petitioner must show a state court ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" (quotation marks omitted)); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (internal quotation marks and citation omitted); *see also Jones v. Cronin*, No. 20-CV-05348, 2022 WL 21853203, at *9 (S.D.N.Y. Apr. 29, 2022) (same), *report and recommendation adopted*, No. 20-CV-5348, 2023 WL 8643800 (S.D.N.Y. Dec. 14, 2023).  Consequently, a federal court must deny a habeas petition in some circumstances even if the court would have reached a conclusion different than the one reached by the state court, because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington*, 562 U.S. at 102; *see also Cullen*, 563 U.S. at 202–03 ("Even if the [Federal] Court of Appeals might have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the [state court] to conclude that [the petitioner] did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012) ("Although we might not have decided the issue in the way that the [New York State] Appellate Division did—and indeed we are troubled by the outcome we are constrained to reach—we . . . must defer to the determination made by the state court . . . ." (citations omitted)).

Additionally, under AEDPA, the factual findings of state courts are presumed to be correct.  *See* 28 U.S.C. § 2254(e)(1); *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997) ("When reviewing a habeas petition, the factual findings of the New York Courts are presumed to be correct." (alteration adopted) (internal quotation marks and citation omitted)); *see also James v. Dill*, No. 18-CV-932, 2023 WL 1967582, at *5 (S.D.N.Y. Feb. 13, 2023) (same).  The petitioner must rebut this presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003) (same); *Mack*, 2023 WL 6200170, at *4 (same).

Finally, only federal law claims are cognizable in habeas proceedings. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also* 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

B.  Analysis

Petitioner raised four grounds for habeas relief in his Petition: (1) Petitioner's right to be present at all material stages of trial was violated when the trial court gave sequestration instructions to the jury in the absence of both Petitioner and defense counsel; (2) the prosecution impermissibly withheld *Brady*/*Giglio* material and that Petitioner is actually innocent; (3) the trial court improperly penalized Petitioner at sentencing for exercising his right to a jury trial;

11

and (4) the prosecutor's comments during summation deprived Petitioner of a fair trial.  (*See* Pet.

5–10.)  Judge Davison dismissed all of Petitioner's claims. (*See* R&R 13–28.)

      In his objections, Plaintiff reasserts three of his claims, including that: (1) Petitioner's

right to be present was violated, (*see* Obj. 1–2); (2) Petitioner was deprived of *Brady*/*Giglio*

evidence, (*see id.* 2–4); and (3) Petitioner was subjected to a vindictive sentence, (*see id.* 4–5).

The Court addresses each of Petitioner's objections to Judge Davison's conclusions in turn.

      <u>1.  Right to be Present</u>

      Petitioner first objects to Judge Davison's conclusion that Petitioner's right to be present

was not violated.  (*See id.* 1–2.)  Specifically, Petitioner argues that his and defense counsel's

absence prevented defense counsel from lodging the appropriate objection(s) in connection with

the court's sequestration instructions to the jury.  (*Id.* 1–2).  In addition, Petitioner asserts that

Petitioner and defense counsel's absence was a "*per se* reversible error."  (*Id.* 2.)

      With respect to whether Petitioner's right to be present was violated, this Court agrees

with Judge Davison's recommendation that such a right was not violated.  "The Fourteenth

Amendment entitles a defendant to be present at a proceeding whenever his 'presence has a

relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'"

*Quaye v. Lee*, No. 19-CV-3097, 2022 WL 1556496, at *10 (E.D.N.Y. May 17, 2022) (quoting

*Fairey v. Tucker*, 567 U.S. 924, 927 (2012) (Sotomayor, J., dissenting from denial of cert.));

*Baker v. Conway*, No. 18-CV-478, 2022 WL 17616400, at *19 (S.D.N.Y. Dec. 13, 2022)

(similar).  "A defendant is entitled 'to be present at all stages of the trial where his absence might

frustrate the fairness of the proceedings.'"  *Quaye*, 2022 WL 1556496, at *10 (quoting *In re*

*Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 128 (2d Cir. 2008)).  "However,

12

'there is no constitutional right to be present when presence would be useless, or the benefit but a shadow.'" *Baker*, 2022 WL 17616400, at *19 (quoting *Cohen v. Senkowski*, 290 F.3d 485, 498 (2d. Cir. 2002)).

Here, the record establishes that court's comments to the jury about sequestration did not violate Petitioner's right to be present.  The record reflects that the court informed the prosecution and defense counsel that it would provide the jury with logistical information concerning sequestration.  (*See* Dkt. 9-29 at 108-09.)  Thereafter, all counsel exited the courtroom, and the jury was brought into the courtroom and informed where they would be sequestered for their deliberations, the location of the hotel, how they would get there, and that they would need to bring personal items the next day.  (*See id.* at 110–20.)  The court gave no instructions or information pertinent to the case which would have required the Petitioner or his counsel's presence.  (*See id.*)  Rather, the sequestration instructions were purely ministerial and wholly unrelated to the substantive legal and factual issues of the trial.  As such, Petitioner has not demonstrated that his absence frustrated the fairness of his proceedings, *Quaye*, 2022 WL 1556496, at *10, or that his presence during the sequestration would be useful, *Baker*, 2022 WL 17616400, at *19.  Therefore, this Court determines that "the challenged discussion bore no substantial relationship to the [Petitioner's] opportunity to defend against the charges," *Ramirez*, 69 N.Y.S.3d at 78, and that Judge Davison appropriately recommended that this incident did not violate Petitioner's right to be present, (R&R 13–15).

In any event, this Court agrees with Judge Davison that even if providing logistical sequestration instruction to the jury outside the presence of Petitioner and his counsel was a violation of Petitioner's right to be present, such an error was a trial error subject to harmless

13

error review.  As a general matter, violations of the right to be present during critical stages of the proceedings are subject to harmless error analysis.  *See Rushen v. Spain*, 464 U.S. 114, 117 n.2 (1983).  The exception to this rule is the "structural defect," where the violation of a particular right is so "egregious" as to "fundamentally undermine the fairness or the validity of the trial."  *Yarborough v. Keane*, 101 F.3d 894, 897, 898 (2d Cir. 1996) (citing *Arizona v. Fulminante*, 499 U.S. 279, 309–11 (1991)).  "To determine whether an error is properly categorized as structural, [the Court] must look not only at the right violated, but also at the particular nature, context, and significance of the violation."  *Id.* at 897.  While "unjustified exclusion of [a] defendant from the entire trial" would constitute a structural defect, less significant violations of the right to be present are subject to harmless error review.  *See id.* at 897–98.

Here, the record indicates that the error was not structural.  Petitioner, by his own account, states that he was only absent for the sequestration instructions, not any other part of his trial.  Accordingly, even "if the [Petitioner's] absence was error, it was of such 'minimal importance to the fair structure of the criminal proceeding' that it could not fall within the classification of 'structural errors.'"  *Contreras v. Artus*, No. 09-CV-7940, 2012 WL 4044872, at *12 (S.D.N.Y. Sept. 11, 2012), *report and recommendation adopted*, 2013 WL 829170 (S.D.N.Y. Mar. 4, 2013), *aff'd*, 778 F.3d 97 (2d Cir. 2015).  Moreover, the Court concludes that any error was harmless given that the court only provided the jury with logistical information, unrelated to the merits of Petitioner's case, and that there is "no basis to conclude that the alleged error 'had [a] substantial and injurious effect or influence in determining the jury's verdict' and that it actually prejudiced [P]etitioner."  *Kotler v. Woods*, 620 F. Supp. 2d 366, 394 (E.D.N.Y.

14

2009) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)); *see also Rushen*, 464 U.S. at 120–21 (holding defendant's absence from two conversations between the trial judge and a juror to be harmless error).

Accordingly, Petitioner is not entitled to habeas relief on his right to be present claim, and Judge Davison's recommendation on this claim is adopted.

### 2. *Brady*/*Giglio* Material

Petitioner next objects to Judge Davison's conclusion that Petitioner was not deprived of *Brady*/*Giglio* evidence. (*See* Obj. 2–4.) In particular, Petitioner argues that "[c]ontrary to the [Judge Davison's] finding, the prosecution did not appropriately provide all the material that it was obligated to disclose," including that a prosecution witness, Kim Perez-Colon, was "given [for her testimony] payments of cash from the Dutchess County District Attorney's Office totaling an amount of approximately $2,200.00." (Obj. 3.) Moreover, Petitioner maintains that "a reasonable likelihood . . . exist[s] that the failure to disclose the assistance could have affected the jury's judgment." (*Id.* at 3–4.)

Under *Brady v. Maryland*, the prosecution is required to disclose all material evidence that is favorable to a criminal defendant. 373 U.S. 83, 87 (1967). This production duty was extended in *Giglio v. United States*, to cover information that could be used to impeach a government witness. 405 U.S. 150, 154 (1972). To establish a *Brady* or *Giglio* violation, "a defendant must show that: (1) the government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." *United States v. Kirk Tang Yuk*, 885 F.3d 57, 86 (2d Cir. 2018). "Reversal for failure to turn over . . . evidence is required if the evidence is 'material'—

that is, in the *Brady* context, if there is a 'reasonable probability' that disclosure would have

changed the outcome of the case, or where the suppressed evidence 'could reasonably be taken to

put the whole case in such a different light as to undermine confidence in the verdict.'" *Id.*

(quoting *Kyles v. Whitley*, 514 U.S. 419, 434–35 (1995)); *see also McCrae v. Lee*, No. 11-CV-

2581, 2017 WL 1319809, at *14 (E.D.N.Y. Apr. 7, 2017) ("Evidence is material if 'there is a

reasonable probability that, had the evidence been disclosed to the defense, the result of the

proceeding would have been different.'" (quoting *Fuentes v. T. Griffin*, 829 F.3d 233, 246 (2d

Cir. 2016))).  Moreover, "[i]mpeachment material is 'less likely to be considered material when

it merely furnishes an additional basis on which to impeach a witness whose credibility has

already been shown to be questionable'[—]i.e. when the evidence is merely cumulative." *Reyes*

*v. Superintendent of Attica Corr. Facility*, No. 11-CV-2479, 2015 WL 3526093, at *6 (S.D.N.Y.

June 2, 2015) (quoting *United States v. Spinelli*, 551 F.3d 159, 165 (2d Cir. 2008)).

Petitioner argues that Judge Davison improperly credited the prosecution's version of

events in determining that Petitioner was not deprived of *Brady*/*Giglio* material.  (*See* Obj. 3.)

However, contrary to Petitioner's contention, Judge Davison concluded that "[b]ased on the

conflicting accounts from Petitioner's counsel and the prosecutor, the record is unclear as to

whether the prosecution indeed disclosed the assistance it provided to . . . Perez-Colon, and if so,

whether the extent of that assistance was disclosed."  (R&R 19.)  The Court agrees with Judge

Davison's determination.  There is a dispute of fact as to whether Petitioner was informed that

the prosecution provided benefits to Perez-Colon.  Respondent contends that the prosecution

provided Petitioner's counsel "with copies of all prosecution witness agreements and advised

him of any and all benefits provided to the prosecution witnesses including the victim witnesses

16

of whom Perez-colon was one, as well as the reasons why such benefits were provided.  Included in that information was that the prosecution was housing and paying for meals of the two victims during the trial and participated in relocating them due to their fear of Petitioner . . . his assailants."  (Opp. at 70.)  Further, Respondent contends that the prosecution provided the payments to Perez-Colon's mother, "who had . . . paid the first month's rent at the place where her daughter was relocated because of a continued threat to kill her by Petitioner . . . and his . . . associates."  (*Id.*)  Petitioner, on the other hand, asserts that the prosecution failed to disclose such information and that "[i]t was not until a FOIL request was filed that [P]etitioner became aware of this *Brady* violation."  (Obj. 3.)

Notwithstanding the conflict, Judge Davison determined that "even assuming *arguendo* that the payment to . . . Perez-Colon's mother for [the witness'] relocation was not disclosed, 'there is not a reasonable likelihood that the failure to disclose the assistance could have affected the jury's judgment.'"  (R&R 19 (quoting *Taylor v. Capra*, 412 F. Supp.3d 126, 138–39 (E.D.N.Y. 2019)).  Again, this Court agrees.  The record reflects that the undisclosed information was not material.  As Judge Davidson found, inter alia, (1) Petitioner's counsel conducted only a limited examination of Perez-Colon; (2) defense strategy dictated that counsel avoid any reference to the fact that Perez-Colon had been relocated—including any payments related to the relocation—to avoid 'opening the door' to evidence that the victim had been threatened by Petitioner and the other Latin Kings; (3) although Petitioner's counsel did not seek to impeach Perez-Colon, the witness was extensively impeached by counsel for Petitioner's co-defendants, and thus disclosure of the relocation assistance would have only had some additional impeaching effect; (4) Perez-Colon's testimony was just one piece in the large trove of evidence at trial, such

17

that her testimony was not what ultimately connected Petitioner to the attack.  (*Id.* at 19–20).

Based on this information, the Court concludes that even if Petitioner was aware that Perez-

Colon received relocation assistance from the prosecution, such information would not have

altered the results of the trial.  *McCrae*, 2017 WL 1319809, at *14 (holding that undisclosed

impeachment information did not "undermine[] confidence in the outcome of the trial." (internal

quotation marks and citation omitted); *see also Taylor*, 412 F. Supp. 3d at 138–39 (holding that

prosecution's failure to disclose their efforts to assist the relocation of prosecution witness for his

own safety as potential impeachment material did not deprive defendant of due process in his

trial, and noting that although such assistance could have motivated the witness to testify

favorably for the prosecution, there was no reasonable likelihood that the failure to disclose the

assistance could have affected the jury's guilty verdict, as defense counsel ably impeached

witness's credibility on cross-examination by introducing prior inconsistent statements, and

witness's recent conviction, and other evidence supporting verdict was strong).

Accordingly, because the Court determines that the information at issue was not material

and there is not a reasonable likelihood that the failure to disclose the assistance would have

affected the trial's outcome, Petitioner is not entitled to habeas relief on his *Brady*/*Giglio* claim.

Therefore, the Court adopts Judge Davison's recommendation as to this claim.

### 3.  Vindictive Sentence

Finally, Petitioner objects to Judge Davison's conclusion that Petitioner was not subject

to a vindictive sentence.  (*See* Obj. 4–5.)  Specifically, Petitioner claims that the sentencing judge

was "frustrat[ed] with the [P]etitioner" because the "[P]etitioner defied the judge" by exercising

his right to a jury trial, which "cost [Petitioner] up to an additional maximum sentence of [sixty-

three and one-half] years' imprisonment." (*Id.*)  Petitioner claims that his sentence violated his

Sixth Amendment and Eighth Amendment rights.  (*See id.* at 5.)

The Court finds Petitioner's Eighth Amendment claim to be wanting.  Under habeas

review, "no federal constitutional issue is presented where . . . the sentence is within the range

prescribed by state law." *Brewster v. New York*, No. 08-CV-4653, 2010 WL 92884, at *10

(E.D.N.Y. Jan. 6, 2010) (alteration adopted) (quoting *White v. Keane*, 969 F.2d 1381, 1383 (2d

Cir. 1992)).  Here, Petitioner was sentenced (1) for the conspiracy count, to an indeterminate

term of eight and one-third to twenty-five years in prison; (2) for each attempted murder count,

to a determinate term of twenty-five years to be followed by five years post-release supervision;

(3) for the assault count, to a determinate term of fifteen years to be followed by five years post-

release supervision; and (4) for the attempted assault count, to a determinate term of ten years to

be followed by five years post-release supervision.  (R&R 5.)  Each of these sentences was

within the range prescribed by state law.  *See* NYPL § 70.00(2)(b), (3)(b); *id.* § 70.02(2)(a), 3(a),

(b); *id.* § 70.45(2).  Accordingly, because Petitioner's sentence is within the statutorily

prescribed range, his Eighth Amendment falls short.  *See Brown v. Lee*, No. 21-CV-2854, 2023

WL 9785319, at *20 (S.D.N.Y. Sept. 15, 2023) ("To the extent [p]etitioner argues his sentence is

unconstitutional because it is longer than the sentence he was offered prior to trial, this claim is

not cognizable on federal habeas review because [p]etitioner's sentence is within the range

prescribed by state law."), *report and recommendation adopted*, 2024 WL 756310 (S.D.N.Y.

Feb. 23, 2024); *Dotsenko v. Joseph*, No. 18-CV-1640, 2019 WL 4917952, at *6 (E.D.N.Y. Oct.

4, 2019) ("Here, it is undisputed [p]etitioner's sentence fell within New York's sentencing

guidelines.  Thus, [petitioner] suffered no federal constitutional violation because her sentence

was within the range prescribed by state law." (internal citation omitted)); *Swinton v. Racette*,

No. 12-CV-9051, 2016 WL 9176732, at *11 (S.D.N.Y. Sept. 20, 2016) (holding that "because

[petitioner's] individual[] sentences and aggregate sentence were within the range prescribed by

state law, [petitioner's] sentencing claims d[id] not present a federal constitutional issue

cognizable on habeas review"), *report and recommendation adopted*, 2017 WL 2664196

(S.D.N.Y. June 20, 2017).

      Petitioner's Sixth Amendment claim fares no better.  Petitioner argues that "[t]he increase

of [P]etitioner's maximum sentence" from the eleven and one-half years offered in his pre-trial

plea offer to seventy-five years sentencing "gives rise to the inference, contrary to [Judge

Davison's] finding, that he was improperly punished with a cruel and unusual sentence for

exercising his Sixth Amendment right to a jury trial."  (Obj. 5.)  The Court disagrees.

      It is well-settled that due process is violated when a penalty is imposed upon a person for

electing to exercise a constitutionally protected right, including the right to have a jury trial in a

criminal case.  *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978); *see also Lowery v.*

*Superintendent, Attica Corr. Facility*, No. 19-CV-6612, 2023 WL 1448046, at *9 (W.D.N.Y.

Feb. 1, 2023) ("It is well established that seeking or imposing a vindictive sentence against a

criminal defendant, in response to his exercise of the right to proceed to trial, violates due

process[.]")  "[W]hile an individual certainly may be penalized for violating the law, he just as

certainly may not be punished for exercising a protected statutory or constitutional right."

*United States v. Goodwin*, 457 U.S. 368, 372 (1982); *see also Searles v. Pompilio*, 652 F. Supp.

2d 432, 440 (S.D.N.Y. 2009) (same).  However, "the mere fact that the sentence imposed

following trial is greater than the offer made during plea[] negotiations, does not indicate that a

20

petitioner has been punished for exercising his right to proceed to trial." *Porter v. Martuscello*, No. 16-CV-1417, 2018 WL 8895807, at *17 (S.D.N.Y. Aug. 10, 2018) (quoting *Walker v. Walker*, 259 F. Supp. 2d 221, 226 (E.D.N.Y. 2003)), *report and recommendation adopted*, No. 16-CV-1417, 2019 WL 2537415 (S.D.N.Y. June 20, 2019); *see also Alcindor v. Schneiderman*, No. 15-CV-1892, 2017 WL 1383997, at *14 (S.D.N.Y. Apr. 14, 2017) (same), *report and recommendation adopted*, No. 15-CV-1892, 2018 WL 583117 (S.D.N.Y. Jan. 25, 2018).  Indeed, "[f]ederal courts routinely reject vindictive sentencing claims based on the disparity between sentences offered during the plea bargaining process and imposed after a guilty verdict." *Porter*, 2018 WL 8895807, at *17 (collecting cases); *see also Bailey v. Ercole*, No. 06-CV-5811, 2007 WL 4707738, at *13 (S.D.N.Y. Aug. 17, 2007) ("When a sentence imposed at the conclusion of a trial is greater than the sentence a prosecutor had been willing to recommend as part of a plea offer, the disparity does not, without more, establish vindictiveness."); *Bonner v. Smith*, 05-CV-4209, 2006 WL 463499, at *8–9 (E.D.N.Y. Feb. 24, 2006) (holding that seventy-five year sentence imposed after trial when defendant was offered a plea bargain of seven years did not establish a violation of defendant's Sixth Amendment right to trial); *Naranjo v. Filion*, No. 02-CV-5449, 2003 WL 1900867, at *9–10 (S.D.N.Y. Apr. 16, 2003) (rejecting petitioner's argument that the disparity between the prosecution's pretrial plea offer of five to ten years and his subsequent sentence of twenty-five to fifty years suggested vindictiveness).

Here, although Petitioner was sentenced to a higher term than what he was offered during plea-negotiations, the law, as stated above, is clear that this alone is not evidence of vindictive sentence.  As such, the Court agrees with Judge Davison that Petitioner was not subject to a

vindictive sentence on the basis that he received a higher sentence after trial in comparison to offer made to him during plea negotiations.

Petitioner also asserts that the state court's statement, "[f]or reasons I don't understand people don't want to plead, I just don't understand," (Dkt. 9-13 at 228), indicates that the court believed Petitioner to be "making a big mistake by not pleading guilty, one that he would pay for mightily by defying the court," and that "the court was exasperated at trial, and vindictively punished the [P]etitioner at sentence[ing]," (Obj. 5).[1]  Petitioner's argument is unavailing.

Threatening Petitioner "with a more severe sentence if he elected to go to trial, . . . would 'establish a per se violation of the [Petitioner's] Sixth Amendment right to a trial.'" *Brewster*, 2010 WL 92884, at *11 (quoting *Fielding v. Lefevre*, 548 F.2d 1102, 1106 (2d Cir. 1977)). However, here, the state court judge did no such thing.  Rather, the challenged statement merely shows the trial judge observing his confusion as to why defendants do not choose to plea.  In fact, the context in which the judge made this statement seems to show that the judge was speaking generally.  (*See* Dkt. 9-13 at 228) (trial judge noting that he has a short calendar and then stating that "[f]or reasons I don't understand people don't want to plead, I just don't understand").)  But even if such a statement was the trial judge's way of demonstrating his suggestion that Petitioner take a plea, such a statement followed by a higher sentence than the plea offer does not establish vindictive sentencing.  In fact, "there is no constitutional violation where a judge offers leniency if a defendant agrees to plead guilty or states that a defendant may

---

[1] The R&R also analyzes other comments made by the state court regarding the trial. (*See* R&R 23.)  However, Petitioner does not object to Judge Davison's findings as to those statements.  (*See* Obj.)  Accordingly, the Court adopts Judge Davison's recommendation as to those statements because "the factual and legal bases supporting [those] findings and conclusions . . . are not clearly erroneous or contrary to law."  *Eisenberg*, 564 F. Supp. 2d at 226.

face a more severe sentence if he is convicted after trial."  *Brewster*, 2010 WL 92884, at *11

(citing *Fielding*, 548 F.2d at 1106); *see also Gaines v. Murray*, No. 03-CV-016, 2008 WL

4890249, at *5 (W.D.N.Y. Nov.12, 2008) ("[A] judge's statements strongly implying that

sentencing will be harsher should the defendant present his case at trial are not necessarily

coercive." (collecting cases)); *Flowers v. Irvine*, No. 94-CV-2240, 1995 WL 669913, at *4

(E.D.N.Y. Oct. 31, 1995) (rejecting habeas petitioner's Sixth Amendment argument where trial

judge stated: "Before this trial goes any further, is there still no possibility of a disposition?  I

think your client is making a dreadful mistake."  Also noting that the "statement was on its face

intended to convey to [petitioner] that a disposition would be in his interest.  There was no threat,

either explicit or implicit").  Here, at sentencing Petitioner's counsel admitted that he and

Petitioner were aware that "if [Petitioner] didn't take the [twelve-year sentence offered during

plea negotiations, the sentence] was going to be substantially more time."  (Dkt. No. 18-1 at 7.)

In response to counsel's statements, the court stated that it "was never involved in the process of

[plea] discussions between [Petitioner] and the prosecution," and further, that the court "[does

not] sentence people—penalize people for going to trial.  [The court] penalize[s] people for what

[it] find[s] at trial[,] what they did, [and] what a jury convicts them of.  No one is ever penalized

for exercising their right to have a jury trial and [Petitioner] is not penalized for that purpose."

(*Id.* at 7–8.)  Following these statements, the judge thoroughly explained the reasons for the

sentences imposed.  (*See id.* at 8–16.)

  As such, on this record, the Court concludes that the state court did not subject Petitioner

to a vindictive sentence.  Therefore, the Court adopts Judge Davison's recommendation and

denies Petitioner habeas relief on this claim.

### III.  Conclusion

The Court, having conducted a thorough and de novo review of the R&R, finds no error. The Court therefore adopts the outcome of Judge Davison's R&R.  Petitioner's writ of habeas corpus is accordingly dismissed with prejudice.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a [petitioner's] good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and noting that an appeal may not be taken in forma pauperis if the court certifies in writing that it was not taken in good faith).

SO ORDERED.

Dated:   March 12, 2024
         White Plains, New York

_____
         KENNETH M. KARAS
         United States District Judge

24